IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

DAVID LEE QUINTANA, )
)
Petitioner, )               4:02cv3194
)
vs. )               MEMORANDUM AND ORDER
)
FRED BRITTEN, )
)
Respondent. )

This matter is before the court on the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("§ 2254 petition") filed by the petitioner, David Lee Quintana.  Also before the court are the respondent's Answer to the § 2254 petition, and the parties' briefs regarding the petitioner's § 2254 claims and the respondent's defenses.

The petitioner challenges his convictions in the District Court of Buffalo County, Nebraska: (1) in Case No. CR 99-49, of aiding and abetting Jaime Rodriguez ("Rodriguez") to commit the crime of robbery of Roger Baumann, during which robbery the death of Baumann resulted; and (2) in Case No. CR 99-22, of aiding and abetting Rodriguez to use a gun to commit or attempt to commit the felony offense of robbery of Baumann.  The petitioner received a sentence of life imprisonment for first degree murder by intentionally aiding and abetting Rodriguez in the felony murder of Baumann, and he received an additional consecutive prison sentence of seven to fifteen years for aiding and abetting Rodriguez in the use of a firearm to commit a felony.  The Nebraska Supreme Court affirmed the petitioner's convictions in State v. Quintana, 621 N.W.2d 121 (Neb.), *modified on denial of rehearing*, 633 N.W.2d 890 (Neb. 2001).

### § 2254 Claims

In his § 2254 petition, the petitioner raises the following claims in support of habeas corpus relief:

1.     *Denial of a fair trial, due process and equal protection*:  Because Rodriguez, who shot and killed Baumann, was acquitted before the petitioner's trial for aiding and abetting Rodriguez, the petitioner could not have aided and abetted a crime which never occurred. Therefore, the court lacked jurisdiction to try the petitioner, and the jury instructions deprived the petitioner of a fair trial.

2.     *Denial of effective assistance of trial counsel*:  Trial counsel failed to (a)

1

notice and challenge the absence of a critical element in the charging document, (b) object to jury instructions and tender his own instructions, (c) move for dismissal of the charges, (d) bring constitutional error to the trial court's attention, and (3) perform adequately at trial.

3. _Denial of effective assistance of counsel on appeal_:  Appellate counsel failed to (a) argue plain error in the jury instructions, (b) brief the use of prejudicial and unsupported testimony, (c) advise the petitioner of his right to seek further review in the United States Supreme Court, (d) exhaust the petitioner's current habeas claims, (e) challenge the trial court's refusal to give the petitioner's jury instruction on proximate cause, (f) seek reversal on the basis of the trial court's failure to grant a mistrial when trial witness Larry Kinkade stated that the petitioner had been in prison, and (g) provide the appellate court with adequate support for the argument on appeal of insufficient evidence to support the convictions.

4. _Insufficient evidence to support the petitioner's convictions_.

## § 2254 Standard of Review

Consideration of the petitioner's § 2254 claims is circumscribed by 28 U.S.C. § 2254(d), which limits this court's review of habeas corpus claims adjudicated on the merits in the state courts.  28 U.S.C. § 2254(d) provides:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In addition, factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary.  See 28 U.S.C. § 2254(e)(1):

(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

2

### Acquittal of Rodriguez

In <u>Standefer v. United States</u>, 447 U.S. 10 (1980) (discussing the history and scope of 18 U.S.C. § 2, the federal aiding and abetting statute), the United States Supreme Court ruled that a defendant accused of aiding and abetting in the commission of an offense may be convicted although the named principal has been acquitted of the offense. Among other reasons, "[n]othing in the Double Jeopardy Clause or the Due Process Clause forecloses putting petitioner on trial as an aider and abettor simply because another jury has determined that his principal was not guilty of the offenses charged." <u>Id</u>. at 22. Cf. <u>United States v. Morton</u>, 412 F.3d 901, 904 (8th Cir. 2005) (acquittal of the defendant's only alleged co-conspirator did not require reversal of the defendant's conspiracy conviction): "[C]onviction of one defendant that is inconsistent with a verdict of acquittal of another defendant on the same count" is not objectionable.

Thus, the Nebraska Supreme Court's decision in <u>Quintana</u> that the petitioner could be convicted of aiding and abetting despite the prior acquittal of the principal was not "a decision ... contrary to, or ... an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Therefore, the petitioner's "Ground One" (filing no. 1 at 3 and, as rephrased, filing no. 34 at 8 *et seq.*) is denied.

### Sufficiency of the Evidence

"In determining the sufficiency of the evidence in habeas cases under 28 U.S.C. § 2254, we view the evidence in the light most favorable to the prosecution and decide whether any rational jury could have found, beyond a reasonable doubt, all of the elements of the crime." <u>Weston v. Dormire</u>, 272 F.3d 1109, 1111 (8th Cir. 2001), *citing* <u>Jackson v. Virginia</u>, 443 U.S. 307, 320-21 (1979). "In applying this standard, '[t]he scope of our review ... is extremely limited .... We must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state, and we must defer to that resolution.'" <u>Whitehead v. Dormire</u>, 340 F.3d 532, 536 (8th Cir. 2003) (citations and internal quotation marks omitted). "[I]n reviewing the sufficiency of the evidence, we are not permitted to conduct our own inquiry into witness credibility; that is a task reserved to the jury." <u>Robinson v. LaFleur</u>, 225 F.3d 950, 954 (8th Cir. 2000).

In filing no. 1 at 7, filing no. 34 at 15, and filing no. 40 at 2-3, the petitioner argues as follows: The record contained no evidence on which the jury could base a finding that Rodriguez killed Baumann, that the petitioner knew Baumann would be shot, or that the petitioner gave Rodriguez a deadly weapon. In addition, one of the state's witnesses testified that the petitioner was in another location when Baumann was shot. That witness also did not testify that she actually viewed the firearm in the petitioner's possession or that she actually saw the petitioner hand the firearm to any other person.

However, the Nebraska Supreme Court found sufficient evidence in the record to support each of the elements of the offenses.  Among other evidence, the court discussed the testimony of prosecution witnesses Abie Cash and Wendy Grim, close friends of the petitioner (Bill of Exceptions at 100-01, 233-34).  See the following excerpts:

> Testimony from several witnesses establishes that both Quintana and Grim believed that Baumann was a "narc" and were therefore angry and suspicious toward Baumann.  Grim testified that she thought Baumann had violated his parole earlier and therefore should have been in jail.  According to Cash, Quintana believed he was being set up.  After Quintana and Grim left Baumann's motel room, they went to Rodriguez' house.  Cash testified that Quintana called Baumann and asked him to meet at the "Chug a Lug" bar the following evening.

State v. Quintana, 621 N.W.2d at 127.

> That next evening, Cash drove Quintana, Grim, Rodriguez, and Stacie Miller to the Chug a Lug bar.  Later, they all went to Rodriguez' house, where Baumann "laid out some lines" of "meth" for Quintana, Grim, and Miller. Believing Baumann was a "narc," Quintana and Grim did not consume any methamphetamine. Shortly after 1 a.m., Quintana, Grim, and Rodriguez left to go to a party with Baumann in Baumann's pickup truck. Baumann drove, Quintana sat in the middle, Grim sat on Quintana's lap, and Rodriguez sat in the passenger seat next to the window.

Id.

> Grim testified that Quintana said to her that Baumann "was going to get fucked up."  Cash testified that in talking to Quintana and Rodriguez before they all left to go to the party, the plan was that they were going to find out what Baumann was up to, and if he was up to no good, then they stated that they were going to "fuck him up," "take him," and "roll him." Cash also testified that "rolling" meant to take his money, drugs, and whatever he had on him.

Id. at 127-28.

> Grim testified that when they were driving to Kinkade's place, Quintana kept asking Grim to "scoot up" and to "get up" and to "move."   Grim believed it was because she was sitting on Quintana's lap.   Grim was later told by Quintana and Rodriguez that Quintana was passing a gun to Rodriguez.

4

Id. at 128.

> When they arrived at Kinkade's residence, Rodriguez got out of the truck and then Quintana also got out and walked 20 to 30 feet away from it .... At that time, Grim heard a "pop" and then Rodriguez jumped back into the truck. Rodriguez had shot Baumann .... Quintana came back and asked, "[D]id you get the wallet?" Rodriguez then got out, got Baumann's wallet, and then got back into the truck and drove Quintana and Grim to the party. Grim started having anxiety attacks, and Quintana told Grim to forget about it or something was going to happen to her. Cash testified that at the party, Quintana took Cash into a backroom and said "we killed him," but Cash did not take him seriously.

Id. Later, the group went to the lake to dispose of Baumann's truck and then proceeded to Rodriguez' house. Id.

> Quintana told Grim that he had gotten $110 out of Baumann's wallet .... Grim testified that while at Rodriguez' house, it began to fill with smoke because everyone was in the kitchen burning Baumann's wallet in a pot.

Id.

In addition to the foregoing, Tony Rodriguez, another prosecution witness, testified that on the way to the Days Inn motel to see Baumann, the petitioner told him that "[Baumann] had owed him some money, and he was going to get it." Id. at 127; Bill of Exceptions at 220. Later, Jaime Rodriguez told Tony Rodriguez: "we done it," motioning with his hand "like he had pulled the trigger." Id. at 128; Bill of Exceptions at 224. Thereafter, "[o]n that following Wednesday, Quintana and Rodriguez went over to Miller's house to dispose of the gun and also the clothes that Quintana and Rodriguez were wearing the night of the shooting. Miller then melted the gun down with his welder and burned the clothes." Id.

The petitioner does not deny that the record contains the foregoing testimony. That testimony provided sufficient evidence to support findings by the jury that the petitioner and Rodriguez planned to rob Baumann, that the petitioner performed one or more affirmative act(s) to encourage the commission of the robbery, including furnishing the murder weapon to Rodriguez, and that Rodriguez shot Bauman in the course of the robbery. The fact that the petitioner can point to evidence favoring his position does not negate the existence of sufficient evidence to support the jury's verdict, and the jury resolved the conflicts in the evidence.

As the Nebraska Supreme Court concluded: "Baumann was killed during the course

5

of Rodriguez' robbery of or attempt to rob Baumann." Id. at 138. The Court also reasoned that "[c]ausation, in the context of felony murder, requires that the death of the victim result from an act of the defendant or the defendant's accomplice. The question of why Rodriguez shot Baumann does not address whether the shooting caused Baumann's death, and there is no dispute that it did." Id. at 138. In other words, "there was no [factual] dispute as to proximate cause ...." Id. Because Rodriguez killed Baumann in the course of a robbery in which the petitioner participated, Rodriguez' personal motives for the shooting did not constitute a separate and intervening cause for the murder. Id. "The question for the jury was instead whether the shooting occurred during the course of [the] robbery." Id. at 137.

The petitioner has failed to demonstrate that the Nebraska courts reached an unreasonable determination of the facts in light of the evidence presented at trial. See 28 U.S.C. § 2254(d)(2) and (e)(1). The petitioner's § 2254 claim of insufficiency of the evidence must be denied.

### Ineffective Assistance of Counsel

The Sixth Amendment guarantees that an accused shall have "the Assistance of Counsel for his defense." U.S. Const. amend. VI. "It follows from this that assistance which is ineffective in preserving fairness does not meet the constitutional mandate ... and it also follows that defects in assistance that have no probable effect upon the trial's outcome do not establish a constitutional violation." Mickens v. Taylor, 122 S. Ct. 1237, 1240 (2002), citing Strickland v. Washington, 466 U.S. 668, 685-86 (1984). See also Bell v. Cone, 122 S. Ct. 1843, 1850 (2002):

> We reasoned that there would be a sufficient indication that counsel's assistance was defective enough to undermine confidence in a proceeding's result if the defendant proved two things: first, that counsel's "representation fell below an objective standard of reasonableness," [Strickland,] 466 U.S., at 688...; and second, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id., at 694.... Without proof of both deficient performance and prejudice to the defense, we concluded, it could not be said that the sentence or conviction "resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable," id., at 687..., and the sentence or conviction should stand.

In evaluating whether counsel's performance fell below an objective standard of reasonableness, the court must examine "whether counsel's assistance was reasonable considering all the circumstances." Strickland, 466 U.S. at 688. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that

6

are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.

Strickland requires the court to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. Accordingly, a defendant must overcome the presumption that counsel's challenged action "might be considered sound trial strategy." Id.

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable .... A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689.

To meet the prejudice prong of the test, the defendant must show a reasonable probability that absent his counsel's deficient conduct, the outcome of the defendant's trial would have been altered. "As a general matter, a defendant alleging a Sixth Amendment violation must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Mickens, 122 S. Ct. at 1240, citing Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Directly or indirectly, virtually all of the petitioner's allegations of ineffective assistance of trial and appellate counsel relate to counsel's inability to prevent the petitioner from being prosecuted and convicted of aiding and abetting a person who was acquitted of commission of the offense as a principal. See filing no. 1 at 3-7; filing no. 34

7

at 11-14; filing no. 40 at 3-5.  Federal courts may grant habeas corpus relief under § 2254 only when there has been a violation of federal statutory or constitutional law.  As stated, the United States Supreme Court has ruled that a person charged with aiding and abetting a crime can lawfully be convicted regardless of the fate of the principal.  Standefer v. United States, 447 U.S. 10 (1980).  No violation of federal law occurred by virtue of the prosecution and conviction of the petitioner for aiding and abetting Rodriguez, notwithstanding Rodriguez' acquittal.

The petitioner's final allegation of ineffective assistance of counsel relates to a defense witness, Larry Kinkade.  The Nebraska Supreme Court described the incident as follows:

> After the State rested its case, Quintana called Kinkade to the witness stand to testify.  Baumann was shot near Kinkade's residence.  Quintana's attorney propounded a series of questions to Kinkade about Kinkade's relationship with Quintana and about some money that Kinkade may have owed Quintana.  On cross-examination, the State questioned Kinkade about the last time Quintana was at Kinkade's residence.  Kinkade stated that the last time Quintana had been at his residence was "probably the night [Quintana] got out of prison."  Quintana made a motion to strike the answer, and the trial court sustained the motion and asked the jury to disregard the last portion of Kinkade's answer.

> After Quintana rested his case, he made a motion for a mistrial based on Kinkade's reference to prison, arguing that it would be very hard for the jury to disregard the reference to prison.  Kinkade never met with Quintana before trial to talk about his proposed testimony despite Quintana's several attempts to do so.  The State responded that the admonishment by the trial court was sufficient.  The trial court stated that although it was unfortunate that the witness would not cooperate in advance, Kinkade was a defense witness, and therefore the trial court overruled the motion for a mistrial.  It should be noted that during jury selection and at points throughout the trial, references were made about Quintana's being in jail and his involvement in drug abuse and other illegal activities.

State v. Quintana, 621 N.W.2d at 129.

The record does not suggest that the witness' inadvertent and unforeseeable reference to "prison" was attributable to any fault of defense counsel.  In addition, counsel acted promptly by moving to strike the reference and by moving for a mistrial.  The court sustained the motion to strike and gave a cautionary instruction to the jury.  The petitioner has not established that he received prejudicial ineffective assistance of counsel.

8

THEREFORE, IT IS ORDERED:

1.     That the Petition for Writ of Habeas Corpus filed by David Lee Quintana is denied and dismissed with prejudice; and

2.     That a separate judgment will be entered accordingly.

DATED this 29th day of August, 2005.

BY THE COURT:


/s Warren K. Urbom
United States Senior District Judge